J. K. BULLOCK ET ALS. v. PLANTERS COTTON-SEED OIL COMPANY.

(Filed 25 February, 1914.)

1. Judicial Sales—Estates—Contingent Remainders—Interpretation of Statutes—Constitutional Law.

Revisal, sec. 1591, rendering valid judgments authorizing the sale of lands wherein there are contingent remainders, is constitutional and valid.

2. Judicial Sales — Estates — Contingent Interests — Interpretation of Statutes—Parties—Representation—Application of Funds.

A testator devised certain lands to his wife during her widowhood or life, which, at her death, were to be equally divided be-

tween the children or "their heirs." The lands were sold in partition in 1904, during the lifetime of the widow, and the children were made parties. One of these children died in 1906, before the death of her mother (in 1909) and her children, the grandchildren of the testator, brought suit to recover their interests in the land devised, claiming they had a vested interest therein in 1904, and not being parties to the proceedings, were not estopped by the judgment in partition: *Held,* the plaintiffs had a contingent interest in the lands at the time of the sale, and were concluded from claiming the lands under the validating act of 1905 (Revisal, sec. 1591). *Semble,* even under the common law the representation of the mother was sufficient to bind the plaintiffs, and the purchaser was not required to see to the application of the proceeds of sale. *Springs v. Scott,* 132 N. C., 564, cited and applied.

APPEAL by defendants from *Connor, J.,* at August Term, 1913, of NASH.

*J. M. Norfleet and H. A. Gilliam for plaintiffs.*
*Bunn & Spruill and Winston & Biggs for defendants.*

CLARK, C. J. Samuel H. Hargrove, under whom both parties claim, died in 1874, and by his will devised all his property, land, crops, stocks, etc., to his wife "during her widowhood or life," and after her death "it shall be equally divided between all my children or their heirs at her death."

The widow never remarried, and died in 1909. At the death of the testator in 1874 there were four children, *i. e.,* (1) Robert Hargrove; (2) a daughter, Lucy, who married Ruffin and died before her mother, leaving two children, Frank and Samuel; (3) a daughter, Martha, who married Spicer, and also died before her mother, leaving a number of children, for whom T. M. Arrington was duly appointed guardian; (4) a daughter, Prudence, who married R. D. Bullock, and who also died before the widow, leaving several children, who are the plaintiffs herein.

In 1904, Mrs. Lucy Hargrove, the widow; R. D. Bullock and his wife, Prudence, the mother of the plaintiffs in this case, who was then living; Frank and Samuel Ruffin, children of the de-

ceased daughter, Lucy, both of whom were of age; the children of Martha Spicer, who were minors represented by T. M. Arrington as their guardian, and Robert Hargrove, all joined in a special proceeding before the clerk of the Superior Court asking to be allowed to sell 7 acres of land, which is the *locus in quo* for division. The proceeding was regular in all respects, the sale made, deed executed, money paid and distributed, and the purchaser, Planters Cotton-seed Oil Company, went into possession and erected its factory. Various parcels of this land have been sold since by the purchaser, the oil company, to the other defendants herein named.

This action is brought on the ground that after the sale and before the widow's death, Prudence Bullock died, and hence that at her death the children of Prudence Bullock became entitled to one-fourth of the land, upon the theory that the words "at her death" made the "heirs" among whom the partition should be made those heirs who were living at the death of the widow, and that the children of Prudence Hargrove not having been made parties to the proceedings in 1904, are not estopped by the judgment therein, and are entitled to recover one-fourth interest in the realty.

The defendants contend that under the will: (1) There was a life estate in the widow, with vested remainder in her children, with provision that in the case of the death of such child before the death of the widow the children or heirs of the deceased child should stand in the place of the parent when the division is made. (2) That all the parties in remainder at the date of the sale in 1904 being before the court, the decree passed the title to the purchaser.

The law favors the early vesting of a remainder. *Whitesides v. Cooper,* 115 N. C., 573; *In re Yancey's will,* 124 N. C., 153; 2 Underhill Wills, sec. 610, note 3. *Chancellor Kent* says that a vested remainder is where there is a present fixed right of future enjoyment. 4 Comm., 194. The defendants contend that under the will the children of the testator took a vested interest and that the provision as to the division at the death

of the widow referred only to the partition which should take place at that time, and did not confer on the grandchildren any vested interest during the lifetime of the parent.

In *Irvin v. Clark,* 98 N. C., 437, the limitation was "To Margaret Irvin and her husband during their natural lives, and to descend to the children of the said Margaret equally." The Court said: "If the devise had been to those children *living at the death* of the mother, there would have been a contingent and not a vested remainder in either, for, until that event occurred, it could not be known who would take, and in such case the contingent interest could not be sold by a court of equity. But when the gift is general, not being confined to survivors when to take effect, it is otherwise, and by representation those who may afterwards come into being are concluded by the action of the court upon those whose interests are vested, but whose possession is in the future."

In *Springs v. Scott,* 132 N. C., 548, it was held: "By Laws 1903, ch. 99, the Court has the power, where there is a vested interest in real estate and a contingent remainder over to persons who are not in being, or when the contingency has not yet happened which will determine who the remaindermen are, to order the sale by conforming to the procedure prescribed by the act. The act is constitutional, and applies to estates created prior to its enactment." See, also, *Yancey's Will,* 124 N. C., 151; *Hutchinson v. Hutchinson,* 126 N. C., 671; *Hodges v. Lipscomb,* 128 N. C., 57, all of which show the disposition and tendency of our courts to favor all sales of land for division, whether vested or contingent. *Bowen v. Hackney,* 136 N. C., 187, is distinguished from the present case because in *Bowen's case* the division was to be "at the expiration of the life estate of my wife," referring to the termination of a property right, while in the present case it is "after the death of my beloved wife," when the property right has already been fixed.

*Hodges v. Lipscomb, supra,* is direct authority for the validity of said sale. In *Springs v. Scott,* 132 N. C., at p. 564, the Court said: *"Without regard to the act of 1903,* the court has the power to order the sale of real estate limited to a tenant for

life, with a remainder to children or issue upon failure thereof over to persons some or all of whom are not *in esse* when one of the class *being first in remainder after the expiration of the life estate* is *in esse* and a party to the proceeding to represent the class, and upon decree passed and sale and title made pursuant thereto, the purchaser acquires a perfect title as against all persons *in esse* or *in posse.*"

Here the person next in remainder to the life estate, towit, the mother of plaintiffs, was *in esse* and a party to the proceeding. True, it is said in *Springs v. Scott,* at foot of p. 564, that "The decree must provide for the investment of the fund in such way as the court may deem best for the protection of all persons who have, or may have, a remote or contingent interest." But this would not require the purchaser to see that the proceeds of the sale were ordered to be thus invested. *Springs v. Scott* has been affirmed in *Hughes v. Pritchard,* 153 N. C., 145; *McAfee v. Green,* 143 N. C., 417, 418.

But whatever doubt there might have been as to this proposition, the matter was settled by the act of 1905, ch. 93, now Revisal, 1591, which provides: "In all cases wherein property has been . . . devised by will upon contingent remainder . . . . wherein a judgment of the Superior Court has been rendered authorizing the sale of such property discharged of such contingent remainder . . . *in actions or special proceedings wherein all persons in being who would have taken such property if the contingency had then happened, were parties,* such judgment shall be valid and binding upon the parties thereto and upon all other persons not then in being: *Provided,* no vested right or estate shall be impaired."

The persons "who would have taken such property if the contingency (the death of the life tenant) had *then* happened" (in April, 1904) would have been the identical parties at that time before the court.

This section was held constitutional in *Anderson v. Wilkins,* 142 N. C., 154, in which it was applied to proceedings already brought (see p. 158 as to legislative power over contingent interests). *Anderson v. Wilkins* has been cited and approved

in *McAfee v. Green,* 143 N. C., 418, where it was held that the statute was enacted for just such occasions as the present. It has been since cited in approval in *Penland v. Barnard,* 146 N. C., 381; *Richardson v. Richardson,* 150 N. C., 551; *Smith v. Miller,* 151 N. C., 627; *Elkins v. Seigler,* 154 N. C., 375; *Swindell v. Smaw,* 156 N. C., 3; *Stephens v. Hicks,* 156 N. C., 244; *Fellowes v. Durfey,* 163 N. C., 313, and in *Dunn v. Hines,* 164 N. C., 121.

Whatever doubt might have been raised by expressions in sundry prior cases, this statute (Revisal, 1591) has settled the law. In *Hodges v. Lipscomb,* 128 N. C., 57, the Court pointed out the public inconvenience and the great hardships arising in many instances because of lack of power in the courts to decree a sale of land where it was limited in remainder to parties not *in esse,* and called attention to the fact that Laws 1794, ch. 204, now Revisal, 1578, had converted, by one stroke of the legislative pen, estates tail into fee simple. In consequence of this intimation the act of 1903, ch. 99, now Revisal, 1590, was enacted. *Hodges v. Lipscomb,* 133 N. C., 203. But that statute not proving sufficiently efficacious, the General Assembly enacted Laws 1905, ch. 93, now Revisal, 1591, which is above set out and which was sustained in *Anderson v. Wilkins,* 142 N. C., 154, which has been cited and approved as above stated.

Our conclusion is that if there had been any doubt as to the validity of the sale under the decree of the court in 1904, it was validated by the act of 1905, Revisal, 1591, which statute was passed prior to the death of Prudence Bullock, who died in November, 1906, subsequent to the passage of said act of 1905. At the time, therefore, of the sale in 1904, and the validating act of 1905, the children of Prudence, the present plaintiffs, had acquired no vested interest in said premises. As was held in *Hodges v. Lipscomb,* 128 N. C., 63, and in same case, 133 N. C., 199, the General Assembly had power over the procedure as to the sale of property in which there were contingent interests as fully as the Legislature had the power to convert estates tail into estates in fee simple. Upon the facts agreed judgment should have been entered in favor of the defendant.

We are not inadvertent to the earnest contention of the learned counsel of the defendants that in *Rives v. Frizelle,* 43 N. C., 239, towards the end of the page, the word ."not" has been left out in the printed report, and that by reason of such omission several subsequent cases had been erroneously construed by the Court. But by reference to the manuscript opinion of *Chief Justice Ruffin,* in our files, we find that the opinion has been printed as he wrote it, and indeed the context shows that there has been no omission of any word.

Reversed.