JANE C. HINTON *v.* DAVID HINTON.

Among other things a testator wills: "My executors are fully empowered to sell the balance of my estate or any part of it they may think best for the interest of my family, or retain the balance after paying my just debts, should they think it more to the interest and welfare of my family. I desire in either case, the property or proceeds shall be kept together until the oldest child shall arrive at a lawful age or shall marry, then the whole of my estate shall be divided between my wife and children. I desire further, that my wife shall have at all times sufficient funds for the maintenance and education of my childen, of principal, if the interest should not be sufficient for that purpose": *Held,* That the discretion as to amount of the expenditure beyond the income, or of the extent of the encroachment to be made upon the principal, must be exercised by the executor.

The general rule is, that where a discretion is given to a trustee, the Court has no jurisdiction to control its exercise, if the conduct of the trustee be *bona*

*fide.* If however, the trustee acts *mala fide*, or refuses to exercise the discretion, the Court is obliged from necessity to interfere and take upon itself the discretionary power.

(*Mendenhall* v. *Mendenhall*, 8 Jones, 287; *Cloud* v. *Martin*, 1 Dev. & Bat. 397; *Johnston* v. *Coleman*, 3 Jones' Eq., 290.)

CIVIL ACTION heard by *Watts, J.*, at the Fall Term, 1872, of WAKE Superior Court, upon the following case. agreed :

" 1. Lawrence Hinton died on the 26th day of September, 1864, leaving a last will and testament which was duly admitted to probate in said county of Wake ; and from which the plaintiff, at May Term, 1866, of Wake county Court, dissented. (So much of the will as is pertinent to the point decided, is fully stated in the opinion of the Court.)

2. That said Lawrence Hinton left him surviving, a widow, the plaintiff, and the following children, to-wit : Isabella, who was born on the 10th day of July, 1852; Annie M., who was born on the 6th day of November, 1853 ; Ransom, who was born on the 26th day of April, 1858, and Mary L., who was born on the 18th day of October, 1863.

3. That said children have resided with their said mother since the death of the testator ; she paying for their tuition and clothing and furnishing them with food at her own table, as *per* exhibits, &c.

4. That the estate of the said testator consists of $4,055.37, proceeds of the sales of land, now invested in bonds and notes, and about 570 acres of land, (294 acres of which have been assigned to plaintiff for dower,) of the estimated value of $6,000.

5. There has been paid to plaintiff, during the year 1868, $218.50, and during the year, 1871, $640.75, which are admitted to be all, or very nearly all, the rents and profits arising from said land and interest on said money, during the time embraced by the charges made in said exhibits. These sums have proved insufficient to pay the charges preferred by the plaintiff.

The plaintiff insists :

(1.) That the defendant, as executor is directed, in case the annual income derived from the said estate is not sufficient for the maintenance and education of the children, to furnish to the plaintiff for that purpose, sufficient funds from the principal thereof.

(2.) That although the sums expended or charged for tuition, clothing and board for the children respectively shall be unequal, yet the sum total of all such expenditures and charges, is a charge upon the estate, and not by the portions of the same to which each child would be entitled if equally divided, and this shall be done until the oldest of the said children should become of age or marry.

(3. That the articles furnished by the plaintiff were proper, and such as were contemplated by the testator in making his said will.

It is submitted to the Court to decide:

1st. Whether the plaintiff is entitled to paid any part of her demand out of the principal of the fund raised from the sale of the lands.

2. If she is so entitled, whether such part of her demand shall be paid out of said funds, as a common fund, or the proper charges and expenditures of each child shall be paid out of his or her equal portion of said funds.

3d. If the Court shall be of opinion, that the plaintiff is entitled to be paid any part of her demand in either way, then the demand shall be referred to a referee, to ascertain what portion or items of the same is a proper charge as well in the aggregate against all of the children, as separately against each child.

It is admitted, that since the institution of this suit, one of the children of the testator, Isabella, married on or about the 1st day of December, 1872.

His Honor, after argument, gave judgment for the plaintiff, from which the defendant appealed.

*Moore & Gatling,* for appellant.
*Mason* and *Devereux,* contra.

RODMAN, J.  Lawrence Hinton died on 26th September,. 1864.  He left a will, in its material parts as follows : " 1.  I desire my executors.shall  sell  such portions of my estate as they deem best, and pay my just debts and funeral expenses, at such time as they may  think best.   2.  My executors are fully empowered to sell the balance of my estate or any part of it they may  think  best  for the interest of my family, or retain the  balance  after  paying my just debts, should they think it more to the interest and  welfare  of my family.   I desire, in either case, the property or  proceeds shall be kept together until the oldest child shall arrive at a lawful age or shall marry, then the  whole  of  my  estate shall be divided between my wife and children.   I desire, further, that my wife shall have at all times sufficient funds for  the  mainte- nance and education of my children, of principal, if the in- terest should not be sufficient for that purpose."

He appointed two executors, of whom the defendant only qualified.   The testator  left  surviving  him  a  widow (the plaintiff) and four children, of whom the oldest has married since the  institution  of  this  action ; the others are infants. The widow dissented from  the will and had dower assigned her.   The personal estate was exhausted in the payment of debts.   Some of the lands were sold by the  executor ; one tract in which  the  widow  has  dower  and  which is worth about $6,000, remains unsold.   A  part  of the  proceeds of that sold was supplied to the widow for the maintenance of the children prior to 1868 ;  how much is not stated, and as there is no controversy respecting that, it is  not material.. After this payment there remained and still remains in the hands of the executor $4,053.37, as principal.   The interest since 1868 to the amount of $859.25 he has paid to the widow for the maintenance of the children.   The plaintiff

has spent for the children, during the years 1868, 1869, 1870 and 1871, $4,185.35, in very unequal proportions as among them. The eldest has received during that time $1,417.85; the second, $1,497.71; the third, $621.09; and the fourth, $576.95.

The plaintiff claims in this action, that the executor shall pay her the sums above named, or as much as remains in his hands, for the purpose of indemnifying her for the payments she has made in behalf of the children. The children are not made parties to the action.

The questions presented by this case may be considered under these heads:

1. In whom was the discretion vested by the will to expend a part of the principal of the estate for the maintenance and education of the children.

2. The extent of the discretion, and how far it can or will be controlled by the courts; and, what strictly is included under this second head, but will be most conveniently considered separately.

3. Whether on the final division of the property the children for whom less has been expended are not entitled to have the difference equalized, by dividing the original fund equally and deducting from the share of each what has been expended on him.

1. The testator makes no devise of his lands. He permits them to descend to the heirs. But he gives the executor a power to sell and of course to receive the proceeds; the executor is to keep the property together and divide it when the eldest child marries or comes of age. After these provisions, the testator adds a direction, (for so it must be regarded,) that his wife shall have a part of the principal of his estate for the maintenance and education of his children, if the interest should not be sufficient.

The wife is to control the manner of the expenditure, but she is to receive the money for the purpose from the executor,

and it seems to follow that the discretion as to the amount of the expenditure beyond the income, or of the extent of the encroachment to be made upon the principal, must be exercised by the executor.

Besides, if the widow be regarded as the donee of the discretionary power, it must be held, that by dissenting from the will she renounced all gifts whether of estates or powers under it; at least of such powers as imply a personal trust and confidence as this does. *Mendenhall* v. *Mendenhall*, 8 Jones, 287.

The decision of this question is not practically important under the present state of facts existing in this case, but it seemed best to present our view of it, because it will render clearer the views we take of the other questions.

2. It is clear that a discretion is given to the executor to exceed the income; it is equally clear that the testator did not intend that the whole fund should be expended. Something substantial was certainly intended to be left to be divided upon the event which has happened. These are the limits of the executor's authority.

The general rule undoubtedly is, that where a discretion is given to a trustee, the Court has no jurisdiction to control its exercise, if the conduct of the trustee be *bona fide.* Lewin on Trusts, 538–543, citing as to discretionary maintenance; *Livesay* v. *Hardiug*, Tam. 460 (Cond. Eng. ch. R.); *Collins* v. *Vining*, Coop. Eq. 472; see also *Kekeinch* v. *Marker*, 3 Macnaghten and Gordon 311, and cases cited in note; *Cloud* v. *Martin*, 1 Dev. & Bat. 397.

If, however, the trustee acts *mala fide*, or refuses to exercise the discretion (Lewin 543), the Court is obliged from necessity to interfere and take upon itself the discretionary power. In this case there is no *mala fides* either on the part of the widow or of the executor. No doubt both have acted with a sincere desire to promote the interests of the children. Neither does the executor absolutely decline to exercise his

discretion. As we understand his answer and the case agreed, he does not deny, that under all the embarrassing and difficult circumstances of the case, the expenditures by the widow were within reasonable limits. At least he does not allege that they grossly exceeded such limits. But for his own protection he requires the sanction of the Court to an expenditure by him for the indemnity of the widow. If the executor, in the fair exercise of his discretion, had refused to sanction and pay these expenditures, the Court would not compel him to do so. For the Court will not assume a jurisdiction, which it is so little able to administer usefully, except with reluctance, and only when it is necessary to do so, to prevent fraud, abuse, or a total diappointment of the intentions of the testator.

Under the pleadings and case agreed, we think our decision must be governed by the same principles as if the executor himself had made the expenditure, and now called on the Court to sanction it. Under the general doctrine relating to discretionary trusts, we are inclined to think that we should do so to the extent of giving him credit in account with the children for the sums expended for them respectively. But we cannot now decide the question, because the children are not parties, and no judgment of ours would bind them.

3. For the same reason, we can do no more than state the present inclination of our opinion upon the question presented under the third head.

Since the commencement of this action, the eldest child has married, and thereby the event has occurred upon which an equal division of the estate is required to be made, upon such division the power of the executor will be determined. Nothing more will remain for him to do in that character. The shares of the infant children will be delivered to their respective guardians, who will have no discretion, but must be governed by the rules which the law has

established for the management of their ward's estates. *Johnston* v. *Coleman,* 3 Jones' Eq. 290.   How shall this division be made in order that it may be equal, as it is directed to be ?   If there is divided only what shall remain of the estate, after deducting from it the aggregate expenditure for the children, and each child is given an aliquot share of that, it is plain that the two oldest children will have received considerably more of their father's estate than the two younger ones.   The former will have received a sufficient education, while there may not remain enough, to give such an education to the latter.   Upon an intestacy, equality of distribution is the rule, but that equality is obtained by requiring all advancements to be brought in and accounted for.   That is a principle of equity sanctioned by the statute, and the same principle would seem to apply to a case like this.

Advancements, (techically so called) are made by a parent before his death, by which event his estate becomes equally divisible among his children.   In the present case, advancements (not technically such) are made by his direction after his death, and in anticipation of the period which he has fixed on for an equal division.   The analogy seems close enough to sustain the application of a common principle of equity to both cases.

If these views be correct, no division can be equal which does not include either all of the common property, or at least so much of it as will be of sufficient value to enable each child to receive, (including as receipts the advancements made to each), an aliquot share of the estate as it stood at the father's death, less, of course, the debts, &c., and the widow's dower.

Without giving any judgment upon the merits of the case, it is remanded, in order that a supplemental complaint may be filed setting forth the marriage of the eldest child, with such other matters as the parties may be advised, and

demanding a division of the property, to which all the children may be parties.

The costs of this Court will await the final judgment. .

PER CURIAM.                              Order accordingly.